# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
Filed: July 24, 2026
Reissued for Public Availability: August 19, 2026

| | |
|---|---|
| JOHN-KENRY GREENE and EMILY DOUANGMALA, parents and guardians of J.K.J.G., | |
| Petitioner, | No. 24-1513V |
| v. | Special Master Young |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*John-Kenry Greene and Emily Douangmala*, *pro se*, Washington, DC, for Petitioner.
*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

## ORDER DENYING PETITIONERS' MOTION FOR RECONSIDERATION[1]

On September 27, 2024, John-Kenry Greene and Emily Douangmala ("Petitioners") filed a petition for compensation in the National Vaccine Injury Program ("the Program")[2] on behalf of their minor child, J.K.J.G. Pet., ECF No. 1. Petitioners alleged J.K.J.G. suffered from a complex febrile seizure resulting from diphtheria, tetanus, acellular pertussis ("Dtap"), haemophilus influenza type B ("Hib"), hepatitis B ("Hep B"), pneumococcal 20-valent ("Prevnar 20"), and inactivated polio ("polio") vaccines received on August 13, 2024. *Id.* at 1. On June 17, 2026, I dismissed the petition for failure to prosecute and insufficient proof. Decision, ECF No. 49. On June 30, 2026, Petitioners timely filed a motion for reconsideration of my Decision pursuant to Vaccine Rule 10(e). ECF No. 50. For the reasons discussed below, Petitioners' motion is denied.

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on June 17, 2026, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the court's website.
[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

Petitioners filed their petition *pro se*, along with an initial set of medical records, on September 27, 2024. Pet., ECF No. 1.[3] As is my practice for all claims that are filed without representation, I ordered a status conference for June 27, 2025, to discuss how Petitioners should proceed. ECF No. 13. During the status conference, I suggested Petitioners seek to obtain counsel, and they represented that they would continue to collect the required medical records for filing. ECF No. 14. Accordingly, I afforded Petitioners 30 days to update me on the progress of seeking counsel. *Id.*

Petitioners filed several additional medical records throughout July 2025. Pet'r's Ex. 1, ECF No. 15; Pet'r's Ex. 2, ECF No. 16; Pet'r's Ex. 4, ECF No. 17; Pet'r's Ex. 3, ECF No. 18; Pet'r's Ex. 5, ECF No. 19; Pet'r's Ex. 6, ECF No. 20. On July 28, 2025, Petitioners filed a status report indicating they had retained counsel contingent on further neurological evaluation of J.K.J.G. and requested 30 days to file a notice of substitution of counsel. ECF No. 21. Based on this representation I granted Petitioners' request, and afforded them until August 28, 2025, to file an update regarding their procurement of counsel. ECF No. 22. Due to later scheduled medical appointments, on August 27, 2025, Petitioners requested another 45-day extension, or until October 14, 2025, to file with new counsel, and this was granted. *See* ECF Nos. 23–24.

On October 14, 2025, Petitioners filed medical records and a status report indicating that J.K.J.G. had been diagnosed with autism spectrum disorder ("ASD") and global developmental delay ("GDD") "following three post-vaccination seizure events." ECF No. 25 at 1.[4] J.K.J.G. had undergone magnetic resonance imaging ("MRI"), which revealed "no permanent brain injury," though Petitioners argued that "[t]he developmental delays are believed to be related to a post-vaccine encephalopathic reaction, similar in nature to the recognized pattern established in the *Hannah Poling* case."[5] *Id.* They stated that an attorney continued to review their case and requested another 30 days to file a motion for substitution of counsel. ECF No. 26. On October 15, 2025, I denied Petitioners' motion, noting that I had already afforded them an additional 45 days for their attorney to determine the extent of their representation. ECF No. 27. Instead, I ordered Petitioners to file a motion for substitution of counsel or a status report indicating their progress by October 29, 2025. *Id.*

Petitioners filed additional medical records[6] on October 29, 2025, along with a status report. ECF Nos. 28–29. Petitioners' status report noted that the attorney that had been reviewing

---

[3] The medical records filed on this date were not given an exhibit number.

[4] These records were not Bates stamped with exhibit numbers.

[5] Petitioners did not explain the significance of the *Hannah Poling* case and did not provide any factual comparison between J.K.J.G.'s symptoms and the facts of that case. Petitioners also did not file any articles related to the *Hannah Poling* case. The *Hannah Poling* case appears to refer to *Poling v. Sec'y of Health & Hum. Servs.*, which involved the case of a child who suffered from chronic encephalopathy as a result of her receipt of the measles, mumps, and rubella ("MMR") vaccine, with features of "[ASD] and a complex partial seizure disorder as a sequel." No. 02-1466V, 2011 WL 678559, at *1 (Fed. Cl. Spec. Mstr. Jan. 28, 2011). The Respondent "conceded that petitioners are entitled to compensation based on a determination that she suffered an injury identified on the Vaccine Injury Table." *Id.*

[6] These records were not Bates stamped with exhibit numbers.

their case referred them to a different attorney, who had "not yet accepted or declined representation." ECF No. 29 at 1. They noted that "[m]any attorneys appear hesitant due to the behavioral label of 'autism,' despite clear evidence that the injury itself occurred after vaccination." *Id.* The status report stated J.K.J.G. had suffered from three alleged seizure episodes to date. *Id.* However, Petitioners did not provide dates or documentation to support these allegations, and Petitioners represented that they would file these records. *Id.* Petitioners also questioned "the accuracy of official medical and emergency records," given that some contained typographic errors. *Id.* Petitioners concluded their status report by characterizing J.K.J.G.'s injury as "a vaccine-related encephalopathic event leading to [GDD] with secondary autism-like characteristics." *Id.* at 2.

In response to Petitioners' status report, on October 31, 2025, I issued an order noting that Petitioners had been afforded 125 days to obtain counsel and had remained unsuccessful. ECF No. 30. I further explained that both *pro se* petitioners and those represented by counsel are held to the same procedural requirements as it relates to evidence sufficiency and deadline adherence; thus, I ordered Petitioners to either file a motion for substitution of counsel or a status report indicating their intent to proceed *pro se* by no later than December 1, 2025. *Id.* at 2. On December 1, 2025, Petitioners filed additional medical records, a "supplemental evidence statement" summarizing J.K.J.G.'s post-vaccination medical history, and a status report. ECF Nos. 31–32. Petitioners' status report stated that they continued to gather records for potential counsel to review but indicated their intent to proceed *pro se* at this time. ECF No. 32. Accordingly, on December 5, 2025, I issued an order directing Respondent to file his Rule 4(c) report by no later than February 3, 2026. ECF No. 33. In my order, I instructed Respondent to "specifically identify any records he believes is missing." *Id.* Respondent was also to "specifically identify issues with the case that would be a barrier to settlement negotiations, including, but not limited to, diagnosis and severity." *Id.*

Respondent filed his Rule 4(c) report, opposing compensation, on February 3, 2026. Resp't's Rep. Respondent noted in his report that in order to meet the Vaccine Act's severity requirement, Petitioners must show that J.K.J.G. "suffered the residual effects of his alleged injury through at least February 14, 2025." *Id.* at 7. Respondent observed that Petitioners had only provided evidence of two febrile seizures on August 13, 2024, and November 4, 2024. *Id.* Respondent also noted that no treating physician diagnosed J.K.J.G. with a "complex febrile seizure," but rather with a "simple febrile seizure." *Id.* at 8.

On February 6, 2026, I issued an order instructing Petitioners to either obtain counsel or address the issues contained in Respondent's Rule 4(c) report by no later than March 4, 2026. ECF No. 35. I explained the inherent difficulties of litigating off-Table cases as a *pro se* litigant, and noted that the issues raised in Respondent's report would further exacerbate these difficulties. *Id.* I also warned Petitioners that a failure to comply with the terms of my order would result in the issuance of an Order to Show Cause for failure to prosecute. *Id.*

On March 5, 2026, Petitioners filed their response to Respondent's Rule 4(c) report and additional medical records. ECF No. 37; Pet'r's Ex. 7, ECF No. 38.[7] Petitioners' response outlined J.K.J.G.'s initial febrile seizure approximately 12 hours after vaccination, and identified additional

[7] These documents were filed incorrectly, and later redocketed on March 10, 2026. *See* ECF No. 36.

convulsions on November 4, 2024, and December 1, 2024. *Id.* at 3. Petitioners also contested Respondent's characterization of J.K.J.G.'s injury as a "simple febrile seizure," instead arguing it was a "complex febrile seizure." *Id.* at 4. Petitioners argued that they satisfied the six-month severity requirement because J.K.J.G. suffered from "ongoing concerns including [GDD]/autism-related care considerations." *Id.* Petitioners further noted their upcoming medical visits for J.K.J.G. and their unsuccessful attempts to retain counsel. *Id.* at 5.

On March 19, 2026, I issued an Order to Show Cause for failure to prosecute. ECF No. 40. In my order I explained that although Petitioners alleged J.K.J.G. is experiencing developmental delays as a result of his vaccines, "the medical records reflect a diagnosis of autism, and not an injury related to a seizure or that is vaccine caused." *Id.* at 1. Thus, I ordered Petitioners to show cause as to why this cause should not be dismissed for failure to prosecute, and instructed them that "[t]he filing of a substantive expert report addressing the issue of the six-month severity requirement and a biological mechanism for vaccine causation" would serve as compliance. *Id.* at 2. However, I warned Petitioners that their "self-authored filings alleging cognitive concerns and/or autism as vaccine-caused sequela will not constitute compliance with this Order." *Id.* Petitioner was to submit their response by May 18, 2026. *Id.*

Petitioners filed a response on March 26, 2026. ECF No. 42. Their response requested until the end of May due to an upcoming neurology appointment with Johns Hopkins Pediatric Neurology on March 30, 2026, and an outpatient video electroencephalogram ("EEG") scheduled for April 20, 2026. *Id.* I found these requests reasonable, and thus extended Petitioners' response deadline to May 29, 2026. ECF No. 43. On May 22, 2026, Petitioners filed medical records, results from a May 17, 2026 EEG, and a status report. ECF No. 45. Petitioners requested their case not be dismissed because they were "actively prosecuting this matter, developing the medical record, and filing additional contemporaneous documentation." *Id.* The status report also noted that J.K.J.G. had suffered a "medical event" on April 10, 2026, while at an applied behavioral analysis ("ABA") therapy session. *Id.* On May 27, 2026, Petitioners filed another motion for extension of time and requested an additional 30 days to continue to file medical records. ECF No. 46. Their motion mentioned the records they filed with their prior status report, as well as an upcoming appointment at John's Hopkins Neurology on May 28, 2026. *Id.* at 1.

The same day, my law clerk emailed Petitioners to ask if they intended to file the records from J.K.J.G.'s March 2026 Johns Hopkins Neurology appointment and April 2026 EEG, as these had not yet been filed (and Petitioners were still within their filing deadline). *See* Informal Comm., docketed June 1, 2026. Petitioners responded to my law clerk's email on June 1, 2026.[8] *Id.*

[8] On June 1, 2026, at 8:17 AM, my law clerk entered an informal communication on the docket noting that he "emailed Petitioners asking if they intended to file the medical records Petitioners previously requested time to file. Petitioners did not reply." *See* Informal Comm. docketed June 1, 2026. At 8:26 AM, Petitioners emailed my law clerk *ex parte* stating "I[] just got told that we didn't reply with documents for the case. I didn't receive anything where I saw to upload more medical records. What can I do to make sure that I can submit all documents and see what the special Masters is requesting? Thank you for your time." My law clerk responded at 8:30 AM by forwarding Petitioners his prior email and cc'ed Respondent's counsel. Thereafter, Petitioners indicated they would file additional medical records. *See* Informal Comm., docketed June 2, 2026.

Petitioners then filed medical records from Johns Hopkins Neurology dated March 30, 2026, and May 28, 2026. ECF No. 48.

On June 17, 2026, I issued a Decision dismissing Petitioners' petition for insufficient proof and failure to prosecute. Decision. On June 30, 2026, Petitioners filed the instant motion for reconsideration of my Decision. ECF No. 50. Petitioners then filed several supplemental medical records that had not been previously filed in support of their motion on July 6, 2026, and July 20, 2026. Pet'r's Exs. A–J, ECF No. 51; Pet'r's Exs. K–N, ECF No. 54.

This matter is now ripe for consideration.

## II. Legal Standard

Under the Vaccine Rules, motions for reconsideration are governed by Vaccine Rule 10(e). Either party may file such a motion within 21 days of the issuance of a special master's decision so long as judgment has not entered and no motion for review has been filed. Vaccine Rule 10(e)(1). The special master may seek a response from the nonmoving party but is only required to do so if granting the motion and reaching a different result. Vaccine Rules 10(e)(2), 10(e)(3)(A)(ii). Because I am denying Petitioners' motion, no response is necessary.[9]

Special masters have the discretion to grant a motion for reconsideration if doing so would be in the "interest of justice." Vaccine Rule 10(e)(3). Vaccine Rule 10 provides a special master with "significant discretion to determine in a particular case what result is in the interest of justice." *McCallister v. Sec'y of Health & Hum. Servs.*, No. 03-2476V, 2011 WL 6000606, at *1 (Fed. Cl. Spec. Mstr. Oct. 6, 2011). Generally, "[a] court may grant such a motion when the movant shows '(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *System Fuels, Inc. et al. v. United States*, 79 Fed. Cl. 182, 184 (2007) (quoting *Amber Res. Co. v. United States*, 78 Fed. Cl. 508, 514 (2007)). Granting such relief requires "a showing of extraordinary circumstances." *Caldwell et al. v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (quoting *Fru-Con Const. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999)). Additionally, special masters are not required to provide "a detailed order denying every argument for reconsideration." *Doe/17 v. Sec'y of Health and Hum. Servs.,* 84 Fed. Cl. 691, 704 n.18 (2008).

Special masters have previously concluded that, with regard to Vaccine Rule 10(e), "the 'interest of justice' standard is likely less onerous than 'manifest injustice.'" *Krakow v. Sec'y of Health & Hum. Servs.*, No. 03-632V, 2010 WL 5572074, at *5 (Fed. Cl. Spec. Mstr. Nov. 12, 2010). Nonetheless, "a motion for reconsideration should not be used to gain a second opportunity to argue what was already decided." *Chuisano v. Sec'y of Health & Hum. Servs.*, No. 07-452V, 2013 WL 6234660, at *20 (Fed. Cl. Spec. Mstr. Oct. 25, 2013) (citing *Fillmore Equip. of Holland, Inc. v. United States*, 105 Fed. Cl. 1, 9 (2012)). A party seeking reconsideration "must support the motion by a showing of extraordinary circumstances which justify relief." *Fru-Con Constr. Corp.*,

[9] On July 2, 2026, my law clerk emailed Respondent to ask if he intended to file a response to Petitioners' motion. *See* Informal Comm., docketed July 2, 2026. Respondent initially indicated his intent to file a response, but later changed his position and opted not to file a response on July 7, 2026. *Id.*; Informal Comm., docketed July 7, 2026.

44 Fed. Cl. at 300. The motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.'" *Prati v. United States*, 82 Fed. Cl. 373, 376 (2008) (quoting *Fru-Con Constr. Corp.*, 44 Fed. Cl. at 300). Similarly, "[m]otions for reconsideration are not intended to serve as vehicles for the submission of evidence that could have been presented earlier." *Lewis v. Sec'y of Health & Hum. Servs.*, No. 15-907V, 2020 WL 1283461, at *1 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) (citing *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (interpreting Rule 59(a)(1) of the Court of Federal Claims)); *Golden Bridge Technology, Inc. v. Apple, Inc.*, 758 F.3d 1362, 1369 (Fed. Cir. 2014) (following Third Circuit law); *Cedillo v. Sec'y of Health & Human Servs.*, 617 F.3d 1328, 1348 (Fed. Cir. 2010).

## III. Discussion

Presently, Petitioners' motion for reconsideration largely rearticulates the prior arguments they made to stay the dismissal of their claim, though with slight differences. Petitioners' primary arguments are (1) that I overlooked evidence of a complex febrile seizure in the medical record, (2) that the dismissal was made on an incomplete record, and that further medical records and future medical appointments would clarify the record for expert review, and (3) that I analyzed the six-month severity requirement too narrowly with regard to J.K.J.G.'s alleged injury. *See generally* Pet'r's Mot. However, for the reasons discussed below, I find Petitioners' arguments insufficient to grant their motion.

### A. Petitioners allege that "the record contained evidence of a complex seizure issue."

First, Petitioners argue that my finding that "the only mention of a complex febrile seizure in the record is Petitioners' own statement of J.K.J.G.'s condition to the behavioral analyst who diagnosed him with ASD" is incorrect, as a radiology note from J.K.J.G.'s initial emergency department ("ED") presentation following his first seizure listed "complex febrile seizures" as the reason for the examination. *See* Decision at 8; Pet'r's Ex. 1 at 116. Petitioners also argue that J.K.J.G.'s medical record from this encounter is "inconsistent with a routine simple febrile seizure." Pet'r's Mot. at 2. Petitioners thus assert that these "conflicting descriptions and objective features should not be resolved against *pro se* Petitioners without expert review." *Id.* However, a closer reading of the medical record reveals that J.K.J.G.'s treating providers disagree with the Petitioners' analysis. Dr. Rivka Thurm was J.K.J.G.'s treating physician upon his presentation to the ED on August 14, 2024, and in the record referenced by Petitioners, she ordered an ultrasound of J.K.J.G.'s abdomen around 2:19 AM with a concern for "complex febrile seizures, right-sided abdominal tenderness; assessment for intussusception." Pet'r's Ex. 1 at 116. No evidence of intussusception was found. *Id.* At 3:42 AM, Dr. Thurm entered J.K.J.G.'s discharge note, which noted that he "never stopped breathing or showed cyanosis" and a final diagnosis of "simple febrile seizure." *Id.* at 9–10. This note by Dr. Thurm was included in the recitation of the medical history in the Dismissal Decision. *See* Decision at 5 ("Dr. Thurm's ultimate impression was a simple febrile seizure and instructed Petitioners to follow up with their [primary care provider] in two days."). While true that Dr. Thurm did indeed consider the possibility of a complex febrile seizure upon J.K.J.G.'s initial presentation, this diagnosis was later changed to reflect a simple febrile seizure following an examination. Petitioners assert that J.K.J.G.'s symptoms, including unresponsiveness and cyanosis, are inconsistent with a simple febrile seizure. Pet'r's Mot. at 2.

However, Petitioners have provided no medical evidence to explain the difference in symptoms between a complex and simple febrile seizure beyond their own assertions. Further, these statements are contradictory to the contemporaneously created medical records by Dr. Thurm, who assessed that J.K.J.G. did not ever lose consciousness or experience cyanosis. *See* Pet'r's Ex. 1 at 9. While Petitioners argue that an inconsistency in the medical record necessitates expert review, no such inconsistency exists here. Rather, J.K.J.G.'s medical record reflects a thoughtful consideration for several conditions, including possible complex febrile seizures, that was ultimately ruled out based upon his presenting symptoms and the history provided by his parents in the ED, and an examination. Petitioners have not presented new evidence or any mistake of fact or law that would warrant reconsideration. This argument thus does not meet the "interest of justice" standard required for me to grant Petitioners' motion. Vaccine Rule 10(e).

**B. Petitioners allege the Decision was premised on an "incomplete" record due to their decision to file the petition early.**

Second, Petitioners argue throughout their motion that my Decision was premised on an "incomplete" medical record, due to their early filing of the petition; and that Petitioners should be allowed to "file missing records, submit focused literature, complete the scheduled epileptology review, and obtain a qualified expert." Pet'r's Mot. at 3. As an initial matter, that Petitioners filed their petition early (less than two months after J.K.J.G.'s initial seizure) was in fact a procedural defect in their petition with regard to the Vaccine Act's six-month severity requirement and is not a point favoring the continued prosecution of their petition as they claim. *See id.* at 2. Indeed, when discussing the enactment of the Vaccine Act, a requirement of an "ongoing disability" was added to the severity requirement "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. Rep. No. 100-391, pt. 1, at 699 (1987); *see also Michie v. Sec'y of Health & Hum. Servs.*, No. 19-453V, 2023 WL 10410004, at *9 (Fed. Cl. Spec. Mstr. Dec. 4, 2023) ("*This is the precise intent of the severity requirement* – to exclude what might end up being a minor injury from compensation, in favor of more significant injuries.") (citing *Wright v. Sec'y of Health & Hum. Servs.*, 22 F.4th 999, 1006 (Fed. Cir. 2022) (emphasis in original)). Further, it is logical that a six-month severity requirement for such cases allows a petitioner to seek evaluation, diagnosis, and treatment of their larger clinical profile by trained professionals to assess whether the vaccine received could have caused the injury in question. This process allows for the development of the medical record that the Program relies on to decide vaccine injury cases, and Petitioners here complicated this process by filing their petition early. While I deeply sympathize with J.K.J.G. and his parents, especially as *pro se* petitioners, the choice to file their petition early instead of waiting for the development of J.K.J.G.'s condition to satisfy the Act's six-month severity requirement is not itself an argument in favor of a reconsideration of the Decision, but rather it affirms my finding that the Act's threshold severity requirement was not satisfied.

Turning to the crux of Petitioners' argument, the fact that the medical record was "incomplete" at the time of the Decision is not a sufficient basis for its reconsideration, given that Petitioners have shown no extraordinary circumstances that prevented them from filing the 14 medical records they have now filed as "supplementary" evidence for their motion. As I noted above, "[m]otions for reconsideration are not intended to serve as vehicles for the submission of evidence that could have been presented earlier." *Lewis*, 2020 WL 1283461, at *1. The dates of

J.K.J.G.'s medical encounters filed by Petitioners as "supplementary" evidence range from August 13, 2024,[10] to April 10, 2026, with the vast majority of the encounters taking place between August and November 2025. *See generally* Pet'r's Exs. A–N. I issued the Decision dismissing the petition on June 17, 2026, more than two months after the latest medical record filed by Petitioners as "supplementary." *See* Decision. Further, all of Petitioners' supplementary submissions, with the exception of the April 10, 2026 record, are records from medical visits that had been completed prior to my February 6, 2026 order instructing Petitioners to "address the issues outlined in Respondent's Rule 4(c) Report," which included disputes regarding diagnosis and severity. *See* ECF No. 35 at 1. Petitioners have not provided an explanation as to why they did not file these records despite my numerous orders beyond the fact that they are "*pro se* parents attempting to navigate a complex and evolving medical case while continuing to seek counsel and expert assistance." Pet'r's Mot. at 3. While I understand the difficulties faced by *pro se* petitioners who attempt to litigate their cases in the Program without the assistance of counsel, as I explained to Petitioners previously, "both *pro se* petitioners and petitioners represented by counsel are held to the same procedural requirements by this Court." ECF No. 40 at 1. That Petitioners were able to accumulate and file these records within one month of the filing of the Decision does not support an argument that they were unable to do so when I previously ordered them to, especially given that Petitioners frequently requested additional extensions of time to continue to file medical records for upcoming doctors' appointments. *See* ECF Nos. 21, 23, 26, 29, 37, 42, 46. Petitioners have presented no "extraordinary circumstances" that prevented them from previously filing these records, and thus I find their arguments to this point to be insufficient for me to grant their motion for reconsideration. *Fru-Con Constr. Corp.*, 44 Fed. Cl. at 300.

**C. Petitioners allege that the Decision's analysis of the six-month severity requirement was "measured too narrowly."**

Third, Petitioners argue that the six-month severity requirement was "measured too narrowly if it was limited to later dates of visible convulsive seizure episodes." Pet'r's Mot. at 4. Instead, they point to J.K.J.G.'s "speech regression, [GDD], staring/zoning episodes, gait and coordination problems, recurrent seizure concerns, abnormal EEG findings, and later Keppra treatment" as evidence of an injury that persisted beyond six months. *Id.* Petitioners also argue that they "are not asking the Court to find that vaccines caused autism," and do not dispute that J.K.J.G. "may meet the criteria for ASD." *Id.* at 3. They wish for expert review to determine if J.K.J.G.'s condition is autism alone, comorbid autism and epilepsy, or another neurologic condition altogether. *Id.* However, J.K.J.G.'s medical record does not divorce his ASD diagnosis from the symptoms that Petitioners rely on to satisfy the six-month severity requirement. Indeed, as explained in the Dismissal Decision, J.K.J.G. saw multiple neurological and behavioral specialists who opined that his symptoms were related to his ASD diagnosis and not a result of his seizures. *See* ECF No. 25 at 10 (behavioral health provider explaining that J.K.J.G.'s febrile seizures were "relatively common in early childhood" and that these were likely unrelated to his autism); *see also* ECF No. 48 at 5 (Dr. Janet Siddiqui opining that J.K.J.G.'s symptoms were "most likely autistic behaviors/automatisms, but [could not] fully rule out focal seizures with impaired

[10] One of these documents, labeled Petitioners' Exhibit N, appears to be a transcript of Petitioners' 911 call the night of J.K.J.G.'s first seizure, which occurred the evening of August 13, 2024. *See* Pet'r's Ex. N. However, the document appears to incorrectly notate the date of the transcript as August 13, 2025. *Id.* at 1.

awareness as these events have not been captured on EEG."), 17 (following EEG testing, Dr. Siddiqui opining that J.K.J.G. "does not yet fit a specific epilepsy diagnostic category; I presume his epilepsy was related to his autism. Genetic testing was apparently negative.").

Additionally, the supplemental records filed by Petitioners in support of their motion for reconsideration further undermine, rather than support, their argument regarding the six-month severity issue. A neurology record filed by Petitioners, dated October 27, 2025, details the results of a brain MRI performed on J.K.J.G. Pet'r's Ex. M at 10. Petitioners reported to neurologist Meaghan Ann Kelly that J.K.J.G. had "recent diagnoses of autism [and a] history of complex febrile seizures." *Id.* Dr. Kelly noted that J.K.J.G. presented "for neurologic evaluation with main concern today for brain damage related to seizures leading to autism. They come here today for a [second] opinion regarding his [] neurologic history." *Id.* at 11. Dr. Kelly then provided the following explanation of Petitioners' reported concerns: "Parents' main question today is whether he has brain injury from prior seizures leading to autism, and whether or not this was as a result of delayed response to medical care because of lack of oxygen (dad uses 'hypoxia' and 'encephalopathy') to the brain." *Id.* Dr. Kelly reviewed J.K.J.G's September 2025 MRI results, and stated that "[n]otably, there is no evidence of abnormal structure nor injury to the brain on MRI. I discussed with parents that ***there is no evidence of injury on MRI brain, and thus, no injury from complex febrile seizure, and thus, would not have caused autism.***" *Id.* at 13 (emphasis added). This record confirms the statement from the Decision that "Petitioners discount the opinions of multiple treaters and assert their belief that J.K.J.G.'s GDD/ASD-like symptoms resulted from an encephalopathy," when in fact multiple neurologists found no evidence of such an injury. Decision at 9. Despite Petitioners' claims, J.K.J.G.'s treating physicians linked his developmental symptoms and his seizures to his autism, and Dr. Kelly explicitly ruled out that his seizures were the cause of his autism or that J.K.J.G. suffered from any brain injury. I quoted to and cited in the Decision this evidence from the medical record establishing that J.K.J.G.'s developmental symptoms were linked to his autism, and not his seizures, and thus would not factor in to the six-month severity analysis. The record from Dr. Kelly confirms my prior analysis, and thus I do not find this argument to be sufficient to warrant a reconsideration of my Decision.

**D. Petitioners' request for expert review.**

Finally, I do not find that Petitioner's request for expert review is reasonable or credible at this stage, as I afforded Petitioners 326 calendar days to either retain counsel or file an expert report in support of their claim prior to its dismissal. Petitioners were unsuccessful in retaining counsel or filing a report, but they did receive treatment for J.K.J.G from multiple specialists. Some of these records were filed prior to my dismissal of the petition, and even more were filed in support of Petitioners' motion for reconsideration. As noted in the Decision, the records filed by Petitioners prior to dismissal reflected that "all of the neurologists who have treated J.K.J.G. since his initial seizure on August 13, 2024, have attributed his cognitive symptoms to an underlying ASD diagnosis that is unrelated to his seizures." Decision at 9. These opinions were supported by multiple EEGs, an MRI, and a computed tomography ("CT") scan. Petitioners' supplemental filings appear to reflect the same. Given the amount of time that has transpired for Petitioners to obtain evidence and the state of the evidence currently presented, it is unlikely that J.K.J.G.'s treaters will abruptly change their opinions after almost two years of treatment. Likewise, it is unlikely that Petitioners will be able to retain an expert. In Program cases, contemporaneous

medical records and the opinions of treating physicians are favored. *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1326 (Fed. Cir. 2006) (citing *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1280 (Fed. Cir. 2005)). Indeed, when reviewing the record, a special master must consider the opinions of treating physicians. *Id*. In addition, "[m]edical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.3d 1525, 1528 (Fed. Cir. 1993). The treaters in this case all agree, and it would not be in the interest of justice to reconsider my Decision on the premise that Petitioners may yet obtain expert review to directly counter the opinions of the numerous experts who have personally treated J.K.J.G.

## IV. Conclusion

Petitioners have had nearly one year to either retain counsel or file an expert report in support of their claim, and numerous opportunities to submit medical records from ongoing medical appointments at the Petitioners' requests. Despite this, Petitioners did not retain counsel, did not file an expert report, and did not file a significant portion of the pertinent medical records until after multiple deadline extensions, an Order to Show Cause, and a Dismissal Decision had been issued for insufficient proof and failure to prosecute. None of the arguments presented by Petitioners in their motion are sufficient to refute the conclusions of J.K.J.G.'s treating physicians with regard to his symptoms, and my Decision reflects this analysis. Given the facts of this case and the history of the litigation, Petitioners have not demonstrated that the Decision contravenes the "interest of justice." Vaccine Rule 10(e).

Accordingly, I hereby DENY Petitioners' motion for reconsideration.

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master